IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| CLEMS YE OLDE HOMESTEAD FARMS LTD., ET AL., | § § § § | |
| Plaintiffs, | § § | |
| VS. | § § | Case No. 4:07cv285 (Judge Schell/Judge Bush) |
| BILL BRISCOE, ET AL., | § § § | |
| Defendants. | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Clarence T. "Casey" Clem, Jr. (Clem) filed a Motion for Partial Summary Judgment on his claim against Hensley Industries, Inc. (Hensley) (Dkt. No. 97). Clem filed this suit as a citizen under the provisions of 42 U.S.C. § 6972(a)(1)(A) & (B), the Resource Conservation and Recovery Act ("RCRA"). According to the Fourth Amended Complaint, he owned a portion of the property in dispute until December 28, 2005. Thereafter, the property was conveyed into a limited partnership in which he is a partner. It appears that all of the individual Defendants conveyed their interest to the partnership at the same time. No Defendants challenge the parties' standing to bring this suit as to the various tort theories. However, since the matter goes to the core of whether the Court has jurisdiction over some or all of the claims, the Court *sua sponte* addresses the issue. The Court, in a telephonic hearing, raised this issue and requested briefing from the parties. Whether or not the Plaintiffs have standing is a jurisdictional consideration which the Court can address *sua sponte*. *See Doe v. Tangipahoa Parish School Bd.,* 494 F.3d 494 (5th Cir. 2007). Having considered the briefs

1

filed by the parties, the Court finds that the individual Plaintiffs have standing to pursue claims in tort, but Clem's Ye Olde Homestead Farms does not. The cause of action for an injury to property belongs to the person owning the property at the time of the injury. *Abbott v. City of Princeton,* 721 S.W.2d 872, 875 (Tex. App. – Dallas 1986, writ ref'd n.r.e.); *Lay v. Aetna Ins. Co.,* 599 S.W.2d 684, 686 (Tex. Civ. App. – Austin 1980, writ ref'd n.r.e.). Without express provision, the cause of action does not pass to a subsequent purchaser of the property. *Abbott,* 721 S.W.2d at 875; *Lay,* 599 S.W.2d at 686. Without such an express provision, a subsequent purchaser cannot recover for an injury committed before his or her purchase. *Lay,* 599 S.W.2d at 686. Each of the four named individuals are either partners or limited partners in the partnership. They have no standing to sue for any cause of action related to the partnership. *See generally Nauslar v. Coors Brewing Co.,* 170 S.W.3d 242 (Tex. App. – Dallas 2005, no pet.). Not having a right to assert a cause of action on behalf of the partnership, the question is whether they may assert any cause of action in tort for injuries to the property prior to their disposition of their interests in the property or may Clem's Ltd. sue for damage prior to the assignment of interests. The general rule is that the right to sue for injury to property is a *personal right* belonging to the person at the time of the injury. Absent an assignment (and none is alleged here), the subsequent purchaser must prove a cause of action capable of assignment and that the cause was, in fact, assigned to the party seeking recovery. *Ceramic Tile Intern., Inc. v. Balusek,* 137 S.W. 3d 722 (Tex. App. – San Antonio 2004, no pet.). The individual Plaintiffs' claims for relief arise out of an alleged nuisance created by the Defendants. Claims for nuisance, trespass and negligence are evaluated in light of Texas law regarding permanent and temporary nuisances. *See Schneider Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264, 268 (Tex. 2004). The right to sue for nuisance arises at the time of the injury. *Exxon Corp. v. Pluff,* 94 S.W.3d 22, 27 (Tex. App. – Tyler

2002), citing *Abbott v. City of Princeton,* 721 S.W.2d 872, 875 (Tex. App. – Dallas 1986, writ ref'd n.r.e.; *Lay v. Aetna Ins. Co.,* 599 S.W.2d 684, 686 (Tex. App. – Austin 1980, writ ref'd n.r.e.). Under Texas law, if a nuisance is permanent, the claim accrues when the injury occurs, even if the landowner does not discover the injury until a later date. *See Santanna Natural Gas Corp. v. Hamon Operating Co.*, 954 S.W.2d 885, 891 (Tex. App. – Austin 1997, pet. denied). Unless the nuisance is a continuing one, Clem's Ltd. would have no standing to sue for any of the tort theories alleged. In *Schneider Nat'l Carriers, Inc. v. Bates,* the Texas Supreme Court conducted a comprehensive analysis of the distinctions between temporary and permanent nuisances and held nuisances should be characterized as a matter of law based on the following criteria: A nuisance should be deemed temporary only if it is so irregular or intermittent over the period leading up to filing and trial that future injury cannot be estimated with reasonable certainty. 147 S.W.3d 264 (Tex. 2004). Conversely, a nuisance should be deemed permanent if it is sufficiently constant or regular (no matter how long between occurrences) that future impact can be reasonably evaluated. *Id.* at 280. Whether Plaintiffs seek past or future damages is irrelevant. "Texas law forbids splitting one claim into several suits when a single suit will suffice." *Id.,* citing *Pustejovsky v. Rapid-Am. Corp.,* 35 S.W.3d 643, 646-47 (Tex. 2000). A nuisance is permanent "when either the defendant's operations or the plaintiff's injuries make it so." *Id.*; *see also Brinston v. Koppers Industries, Inc.,* 538 F.Supp.2d 969, 977 (W.D.Tex. 2008). The nuisance complained of here is a permanent one, even if some dumping occurred after the conveyance. *See In re Premcor Refining Group, Inc.*, 233 S.W.3d 904 (Tex. App. – Beaumont 2007, no writ) (discharge of noxious fumes over a one hundred year period; no showing that conditions were sporadic or unpredictable); *see also Schneider Nat'l Carriers, Inc.*, 147 S.W.3d at 268. Therefore, Clem's Ltd. has no standing to sue in tort. Both parties agree the individual

landowners would have standing to sue. The Court has reviewed the cases cited by the parties for this proposition and finds that only one case stands for the proposition that a prior owner can sue for damages to land after a conveyance of land by that party prior to suit. *Texas Cent. R. Co. v. Brown,* 86 S.W. 659, 660 (Tex. Civ. App. 1905, no writ). The *Abbott* case, cited by both parties, states, *in dicta,* that a prior owner of property does not lose a right to sue. *Abbott, supra.*, citing *Vann v. Bowie Sewerage Co.*, 90 S.W.2d 561 (Tex. 1936). However, *Vann* merely holds that a subsequent owner has no standing to sue in a permanent nuisance case and that the deed did not effect a transfer of the vendor's claim for damages. There is scant authority that addresses whether a prior owner has standing to sue for property damages once the land is conveyed. However, since the parties agree on the issue, the Court need not determine whether a hundred year old, no writ case is the controlling law on this issue in Texas. Most of the cases reviewed by the Court merely state that the right to sue belongs to the previous owner at the time the injury occurred, not that a prior owner can sue once the property is conveyed. Therefore, the Court holds that the individual Defendants have standing to assert causes of action for nuisance, negligence, trespass, and "aiding and abetting" against the Defendants in this case. Further, to the extent the individual Defendants seek to sue Briscoe or his wife for any claims related to the tort theories addressed above, such Defendants have standing.

As to the RCRA claim, Clem alleges that he contracted with Bill Briscoe in 2000 to bring in clean fill material to reclaim certain of Clem's property located in a flood plain. As mentioned, the license agreement was signed by Briscoe, but appears never to have been signed by Clem's Ltd. Clem alleges that over the course of several years, Briscoe dumped foundry sand on the property which was Hensley's industrial waste. Section 6972(a)(1)(A) of the RCRA provides that any person may commence a civil action against any person who is alleged to be in violation of any permit, standard,

4

regulation, condition, requirement, prohibition, or order effective pursuant to the RCRA (the "A" claim). Clem points to Section 4005 of the RCRA which makes open dumping of solid wastes illegal. In other words, no dumping without a license. Since Briscoe did not have a license or permit to dump, Clem seeks partial summary judgment that Hensley, the manufacturer, is liable. As a general rule, to establish an "A" claim, Clem must (1) show a violation of either a state or federal law that became effective pursuant to the RCRA; (2) show that the violation is a continuing one; and (3) establish that neither the EPA nor the State has commenced a civil or criminal action in court. *Glazer v. American Ecology Env'tal Servs. Corp.*, 894 F.Supp. 1029 (E.D. Tex. 1995). Clem also seeks relief under Section 6972(a)(1)(B) (the "B" claim), which allows an action against any persons who have contributed or are contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment.

In order to prevail under the "B" section, a plaintiff must establish the following elements:

1. The defendant is a person, including, but not limited to, one who was or is a generator of solid or hazardous waste, or one who was or is an owner or operator of a solid or hazardous waste treatment, storage, or disposal facility;

2. The defendant has contributed to, or is contributing to, the handling, storage, treatment, transportation, or disposal of solid or hazardous waste; and

3. The solid or hazardous waste may present an imminent and substantial endangerment to human health or the environment. 42 U.S.C. § 6972(a)(1)(B); *Consolidated Companies, Inc. v. Union Pacific R. Co.*, 499 F.3d 382, 386 (5th Cir. 2007).

In defense to the "A" claim, Hensley contends that the subsection has no application to past violations. The "A" claim wording of the statute contains the following language: "who is alleged to be in violation...." The wording of this and other environmental statutes – specifically, the phrase "is alleged to be in violation" – creates some question as to whether the violation must be ongoing

5

at the time of the allegation. In *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.,* 484 U.S. 49, 56, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987), the Supreme Court addressed this issue in the context of the Clean Water Act, 33 U.S.C. § 1365(a). The Supreme Court interpreted "alleged to be in violation" to require that appellants allege a state of "continuous or intermittent violation." *Id.* at 57. "Wholly past violations" are not covered by the phrase, and citizen suits for wholly past violations are therefore not authorized by the statute. *Id.* at 64. The Court noted that identical language was used in the RCRA. *Id.* at 57. In *Hamker v. Diamond Shamrock Chemical Co.*, 756 F.2d 392 (5th Cir. 1985), the Court held that the language "alleged to be in violation" as contained in the Federal Water Pollution Control Act mandated that private citizens could only bring suit against a defendant that was currently violating the Act at the time of the complaint. *Id.* at 395. Hensley points out that there is no dispute that deliveries stopped sometime in May 2006, well before this suit was filed. However, Clem points out that the presence of the material constitutes a continuing violation and, thus, actionable under the statute. Many decisions have struggled with the question of when a wholly past violation becomes one of a continuing nature. *See generally City of Mountain Park, GA v. Lakeside at Ansley LLC*, 560 F.Supp.2d 1288 (N.D. Ga. 2008) for an excellent discussion of the split of cases across the country; *see also Sierra Club v. El Paso Gold Mines, Inc.*, 421 F.3d 1133 (10th Cir. 2005) (holding that an "A" claim exists when a site where a past violation occurred continues to contribute to the discharge of pollutants).

As for the "A" violation, there is no pleading that the landfill operates as a continuing violation, only that it continues to present an imminent and substantial endangerment to individuals and the environment. This is, in effect, an allegation of a "B" violation. The Fourth Amended Complaint also alleges that the solid waste continues to be present in the environment and is *subject*

to storm water discharges. Clem cites to certain evidence that he contends supports his "A" claim. He cites Briscoe's specific testimony in Attachment 5 at 51-52. The Court could find no such reference. At the hearing, Plaintiffs' counsel also could not find any exhibit matching the reference. Clem also cites the testimony of Ramirez, who was one of the drivers who hauled sand to the property. However, Ramirez's testimony provides no insight into a "continuing violation." Clem also cites a report from the Texas Commission on Environmental Quality. (Attachment 7A at pg. 3). Again, there is no notation of continued pollution, only a statement as to a "potentially affected area." The Court could find no report or mention in the evidence cited by Clem that there was ongoing contaminant pollution. Therefore, Clem has not met its burden on its Motion as to the "A" claim.

Hensley has also filed a Motion for Partial Summary Judgment Against Plaintiffs (Dkt. No.118).[1] First, it alleges that the Court has no jurisdiction over the "A" claim since there has been no showing of a continuous violation. For the reasons noted above, the Court agrees. Likewise, Defendants LBJ Trucking Co., Inc. and Robert Ramirez's Motion for Partial Summary Judgment Against Plaintiffs as to the "A" claim is granted (Dkt. No. 180).

As to the "B" claim, Hensley contends that the required notice was deficient and the Court lacks jurisdiction over that claim. On November 20, 2006, Clem's counsel, Fredrick W. Addison, III, sent a letter to the Defendants. The letter is referenced "Resource Conservation Recovery Act ("RCRA")- Pre-Suit Notice Pursuant to 42 U.S.C. Section 6972(b)(1)(2)." The letter references that Clem's claims are under RCRA, 42 U.S.C. Section 6972(a)(1)(A) & (B). The letter goes on to inform the Defendants that the purpose of the letter is to give them the *60* day notice period for citizen suits

---

[1]Defendants Paradigm Engineering, LLC f/k/a Paradigm Engineering, Ltd., Gracombs, L.L.C., General Partner of Paradigm Engineering, Ltd., Leigh Ann Prins, LBJ Trucking Co., Inc. and Robert Ramireez adopted and joined in Hensley's Motion for Partial Summary Judgment.

under 42 U.S.C. Section 6972(a)(1)(A) (emphasis added). The letter informs the Defendants that they have violated the open dumping provisions of the RCRA. There is no mention of the term *"imminent and substantial endangerment."* In fact, there is no notice of the endangerment. At best, counsel's comments that the facility is located in a flood plain and is not designed to prevent discharges of pollutants into the waters of the United States could lead to an inference that such conditions constitute endangerment.

With respect to the term "endangerment," courts have held that "[a]n 'endangerment ' is not actual harm, but a threatened or potential harm." *United States v. Conservation Chemical Co.,* 619 F.Supp. 162, 192 (D.C. Mo. 1985), *superseded by statute as stated in Consolidated Edison Co. of New York, Inc. v. UGI Utilities, Inc.,* 423 F.3d 90, 98 (2d Cir. 2005), *rejected on other grounds by United States v. Northeastern Pharmaceutical & Chemical Co. Inc.,* 810 F.2d 726, 732 (8th Cir. 1986); *see also Dague v. City of Burlington,* 935 F.2d 1343, 1356 (2d Cir.1991), *rev'd in part on other grounds,* 505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992) (under RCRA, "a finding that an activity may present an imminent and substantial endangerment does not require actual harm"); *Price v. United States Navy,* 39 F.3d 1011, 1019 (9th Cir.1994) (noting that "[c]ourts have ... consistently held that 'endangerment' means a threatened or potential harm and does not require proof of actual harm") (collecting cases); *Interfaith Community Organization v. Honeywell International, Inc.,* 263 F.Supp.2d 796, 837 (D. N.J. 2003) (holding that "an 'endangerment' is present if there is merely threatened or potential harm"); *United States v. Union Corp.,* 259 F.Supp.2d 356, 400 (E.D.Pa.2003), citing *Dague,* 935 F.2d at 1356.

The letter ends with the comment, "(D)uring the notice period, we are available to discuss this matter with you...." The only notice period referenced in the letter is 60 days. The starting point for

interpreting a statute is the language of the statute itself. *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108 (1980). Nothing in the legislative history of the citizen suit provision militates against honoring the plain language of the notice requirement. *See Hallstrom v. Tillamook County,* 493 U.S. 20 (1989). An "A" claim targets a continuing violation. A "B" claim targets an imminent and substantial endangerment to health or the environment. Both notices serve distinct functions. Does the fact that Clem stated that suit would be brought in 60 days foreclose a "B" claim? The Court believes that the threat of suit is notice compliance, and that as long as the Plaintiff waits the statutory 90-day period, Clem has complied. *See Zands v. Nelson,* 779 F.Supp. 1254 (S.D. Cal. 1991) ("The fact that the letter giving notice stated that Plaintiffs would bring the suit in 60 days is irrelevant. Regardless of whether the threat is of suit in 90 days, 60 days, or even one week, 90 days' notice is complied with when the time from 'threat' of suit to the time suit is brought is at least 90 days."). Clem gave notice on November 26, 2006, but did not file suit until June 12, 2007, over six months after notice of suit. To hold that notice is deficient for failure to mention 90 days exalts form over substance and defeats the purpose of requiring notice.

Hensley argues that, in any event, the notice is deficient and does not comply with a "B" notice claim. Clem did allege the specific RCRA sections alleged to have been violated. He also provided a generic description of the activity alleged to constitute the violation. He provided a location for the alleged violation and the names and addresses of the persons giving notice. The Court finds compliance. *See Brewer v. Ravan*, 680 F.Supp. 1176 (M.D. Tenn. 1988).

The Court finds that there is a fact issue as to whether there is an imminent and substantial endangerment. Hensley's expert opines that there is not such endangerment. Briscoe has also sought to supplement the record with deposition testimony of Samuel Barrett from the TCEQ (Dkt. No. 213).

9

The motion is **GRANTED**. Barrett says there is no imminent endangerment. Clem's expert says the opposite. At the hearing on the Motions, all parties agree that there is a fact issue if notice is sufficient. Therefore, all Motions for Partial Summary Judgment are denied as to the "B" claim.

Hensley also filed a Motion for Partial Summary Judgment on its claim that the economic loss rule prevents recovery in tort for losses resulting from Briscoe's failure to perform under his license agreement with Clem (Dkt. No. 179). Briscoe entered into a license agreement with Clem's Ltd. to haul fill to the property. The agreement apparently was only signed by Briscoe. Curiously, Briscoe, who signed the agreement, says the agreement is unenforceable. Clem's Ltd., which did not sign the agreement, says it is enforceable. Under the economic loss rule, if a plaintiff only seeks to recover for the loss or damage to the subject matter of a contract, he cannot maintain a tort action against a defendant. *Southwestern Bell Tel. Co. v. DeLanney,* 809 S.W.2d 493, 494 (Tex.1991). Simply stated, under the economic loss rule, a duty in tort does not lie when the only injury claimed is one for economic damages recoverable under a breach of contract claim. *Trans-Gulf Corp. v. Performance Aircraft Servs., Inc.,* 82 S.W.3d 691, 695 (Tex. App. – Eastland 2002, no pet.). The rule has been expressed and applied by Texas Courts in two related, overlapping contexts. First, the doctrine has been applied to preclude claims brought in tort to recover economic losses when those losses are the subject matter of a contract. Second, tort claims are also precluded against a manufacturer or seller of a defective product where the only damage is that to the product with no concomitant personal injury or property damage. *See Pugh v. General Terrazzo Supplies, Inc.*, 243 S.W.3d 84 (Tex. App. – Houston [1st Dist] 2007, no pet. h.); *Equistar Chemicals, L.P. v. Dresser-Rand Co.*, 240 S.W.3d 864 (Tex.2007). This rule has been extended to those who are not in contractual privity, a position Hensley finds itself in the case *sub judice*. *See, e.g., Coastal Conduit*

*& Ditching, Inc. v. Noram Energy Corp.,* 29 S.W.3d 282, 285-90 (Tex. App. – Houston [14th Dist.] 2000, no pet.); *Hou-Tex, Inc. v. Landmark Graphics,* 26 S.W.3d 103, 106-07 (Tex. App. – Houston [14th Dist.] 2000, no pet.); *Hininger v. Case Corp.,* 23 F.3d 124, 126-27 (5th Cir. 1994).

Clem takes the position that the doctrine does not apply to personal injury or property damage. However, as Hensley points out, Clem's complaint lies in Briscoe's failure to perform the contract. Briscoe was hired to bring in acceptable fill, but failed to do so. In *Coffey v. Fort Wayne Pools, Inc.*, 24 F.Supp.2d 671 (N.D. Tex. 1998), plaintiffs sued a pool company for an independent contractor's failure to comply with the contract. The independent contractor failed to construct the pools in a timely manner, leaving large holes in the plaintiffs' backyards. The Court held that plaintiffs' negligence claims were barred by the economic loss doctrine. In the end analysis, is the claim for damages rooted in the defective fill, or is it a claim that Clem did not receive the benefit of the bargain as evidenced in the license? *See Daimler-Chrysler Corp. v. Inman*, 252 S.W.3d 299 (Tex. 2008). In this regard, Clem's Ltd. has also filed a Motion for Summary Judgment Against Bill Briscoe on its contract claim (Dkt. No. 112). As stated, only Briscoe signed the agreement. The law in Texas has long been that a writing orally assented to by both parties may constitute a contract between them, even if only one signs the contract. *Martin v. Roberts,* 57 Tex. 564 (Tex. 1882). Even though the property was not specifically identified on the Exhibits to the License Agreement, both Briscoe and Clem's Ltd. knew where the property was located. The Court finds, on the basis of agreement and conduct of the parties, that there was a valid contract in writing. Briscoe points out that there is an arbitration clause in the contract which mandates arbitration and requests that if the Court finds a valid contract, that it order Briscoe and Clem's Ltd. to arbitration. At the hearing, Clem's Ltd. indicated that it opposed arbitration at this late date. Briscoe conditionally asserted this

right to arbitrate in his response to Clem's Ltd.'s Motion for Partial Summary Judgment. The question is whether Briscoe has waived his right to assert arbitration. At the hearing, Briscoe argued that he did not move for arbitration because he did not believe the license agreement was valid. Waiver occurs when a party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party. *Republic Ins. Co. v. PAICO Receivables, LLC,* 383 F.3d 341 (5th Cir. 2004). Briscoe has never filed a pleading asserting his right to arbitrate. He has engaged in extensive discovery, as well as filing numerous motions, without ever raising the issue. The Court has reviewed the Fifth Circuit cases dealing with waiver and finds that Briscoe's demand is too late and he has waived his rights to arbitrate. Notwithstanding this issue, the Court denies Clem's Ltd.'s Motion for Summary Judgment on the breach of contract claim. The Court finds that there are sufficient fact issues as to waiver and estoppel as outlined in Briscoe's response.

An issue left for resolution is whether the individual Plaintiffs' claims in tort are barred by the economic loss rule. The cases relied on by Clem deal primarily with defective products. However, as the Court has noted, the doctrine is not limited to defective products. The Court finds that the doctrine precludes recovery as to the remaining tort claims as to all parties, even those not in privity of contract. The subject matter of the contract was fill. Clem's Ltd.'s position is that what was delivered was unacceptable fill. The purpose of the license is landfill reclamation. The compost material shall be dirt, rock, concrete, wood, and similar material. Briscoe agrees not to dump or store as compost any material not native to premises other than concrete. Briscoe also agrees that if the use of the property creates an unsafe or hazardous condition, he will remedy such condition. Briscoe is to obtain appropriate permits. He also agrees not to use the property in violation of any statute or regulation or which would constitute *nuisance or waste* (emphasis added). Briscoe also agrees to

cause his contractors, licensees, invitees, and employees to comply with governmental rules and regulations. He specifically agrees to hold Clem's Ltd. harmless from and against all claims, liabilities, losses, damages, and costs, foreseen and unforeseen. Briscoe agrees to purchase insurance to protect against property damage. Clem's Ltd. is to be an additional insured under the insurance contract. Briscoe agrees to reimburse Clem's Ltd. for any expenses incurred by Clem's by reason of Briscoe's default. On termination of the license, Clem's Ltd. is granted the right to recover from Briscoe all damages that Clem's Ltd. incurs by reason of default. The well-drafted and comprehensive license takes this case out of tort and squarely puts it in contract. As noted, the rule even applies to those not in privity of contract. *See Pugh v. General Terrazzo Supplies, Inc.,* 243 S.W.3d 84 (Tex. App. – Houston [1st Dist.] 2007, pet. denied);*Coastal Conduit & Ditching, Inc. v. Noram Energy Corp.,* 29 S.W.3d 282, 285-90 (Tex. App. – Houston [14th Dist.] 2000, no pet.); *Hou-Tex, Inc. v. Landmark Graphics,* 26 S.W.3d 103, 106-07 (Tex. App. – Houston [14th Dist.] 2000, no pet.); *Hininger v. Case Corp.,* 23 F.3d 124, 126-27 (5th Cir.1994); *Sterling Chemicals, Inc. v. Texaco Inc.*, 259 S.W. 3d 793 (Tex. App. – Houston [1st Dist.] 2007, pet. denied). This privity also applies to the individual Plaintiffs who were limited partners in Clem's Ltd. Here, the injury is to the subject of the contract itself – land and unacceptable fill. The only alleged damage to the land is caused by the placement of unacceptable fill. The rule restricts the parties to contractual remedies for those economic losses associated with the relationship, even when the breach might reasonably be viewed as a consequence of one or more parties' negligence. *See Lamar Homes, Inc. v. Mid Continent Cas. Co.,* 242 S.W.3d 1 (Tex. 2007). All parties are granted summary judgment on Plaintiffs' claims for nuisance, trespass, and negligence (Claims 3, 4, 5, and 6).

Briscoe and his wife also complain that they were not properly notified of the DTPA violation.

Suit was filed on June 27, 2007. Notice was not timely given, and Briscoe preserved his objection of improper notice by timely requesting an abatement.

As a prerequisite to filing a suit for damages under the DTPA, "a consumer shall give written notice to the person at least 60 days before filing the suit, advising the person in reasonable detail of the consumer's specific complaint ...." Tex. Bus. & Com. Code Ann. § 17.505(a). A DTPA defendant "who does not receive written notice, as required by Subsection (a), may file a plea in abatement not later than the 30th day after the date the person files an original answer in the court in which the suit is pending." Tex. Bus. & Com. Code Ann. § 17.505(b). The Act provides for an automatic abatement on a verified plea. The Court could not find a verification. However, without verification, Briscoe is entitled to a hearing on the notice claim. *See Andrade Enterprises, Inc. v. Cinnaroll Bakeries*, *Ltd*., 2003 WL 22736538 (W.D. Tex. 2003).

Therefore, the Court hereby sets Defendant Hensley Industries, Inc.'s Motion to Abate (Dkt. No. 216) for a hearing on ***Wednesday, December 10, 2008 at 2:30 p.m. at the U. S. Courthouse, 7940 Preston Road, Room 108, Plano, Texas 75024.***

### Recommendation

As previously stated, Defendants Bill Briscoe's and Hensley Industries, Inc.'s Motion for Leave to Supplement Summary Judgement Record (Dkt. 213) is **GRANTED**.

Based upon the foregoing, the Court's recommendations are as follows:

- Plaintiff Clarence T. "Casey" Clem, Jr.'s Motion for Partial Summary Judgment against Hensley Industries, Inc. (Dkt. 97) is **DENIED**.

- Plaintiff Clem's Ye Olde Homestead Farms, Ltd.'s Motion for Partial Summary Judgment against Bill Briscoe (Dkt. 112) is **DENIED**.

14

- Hensley Industries, Inc.'s Motion for Partial Summary Judgment Against Plaintiffs (Dkt. 118) with respect to Plaintiffs' claims under 42 U.S.C. §§ 6972(a)(1)(A) and (B) as to the "A" claim is **GRANTED**.

- Hensley Industries, Inc.'s Motion for Partial Summary Judgment Against Plaintiffs (Dkt. 179) on the applicability of the economic loss doctrine is **GRANTED**.

- Defendants LBJ Trucking Co., Inc.'s and Robert Ramirez's Motion for Partial Summary Judgment Against Plaintiffs (Dkt. 180) as to the "A" claim is **GRANTED**.

- All Motions for Summary Judgement on the "B" violation are **DENIED**.

- Clem's Ltd's complaint for tort is **DISMISSED** for lack of standing.

Within ten (10) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. § 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SO ORDERED.**

**SIGNED this 6th day of December, 2008.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE